**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| PATRICIA WATERS AND SCOTT NOVAK )<br>1603 Heather Heights )<br>Eldersburg, MD 21784 )<br> )<br> )<br>                  Plaintiffs, )<br> ) Civil No. _____<br>v. )<br> )<br> )<br>CITY OF LAUREL, MARYLAND )<br>11785 Beltsville Drive, 10th Floor )<br>Calverton, MD 20705 )<br> )<br> )<br>                  Defendant. )<br>_____) | |

**VERIFIED COMPLAINT FOR DECLARATORY RELIEF,
INJUNCTIVE RELIEF, AND DAMAGES**

COME NOW the Plaintiffs, Patricia Waters and Scott Novak, by counsel and for their causes of action against Defendant City of Laurel, Maryland, allege and state the following:

**INTRODUCTION**

1. The Plaintiffs are the Property owners of commercial real Property, known as 604 Main Street, (and referred to hereinafter as "the Property"), located in the City of Laurel Historic District, zoned C-V.

2. During the last few years it became apparent that the Plaintiffs had lost the opportunity to lease the Property to a church because that the City of Laurel had (1) enacted legislation that had a discriminatory impact on houses of worship, and further that (2) the Property had been subject to increasingly restrictive regulations, unbeknownst to them, that allowed the City of Laurel to incrementally increase its control over the use of the Property after

the Plaintiffs had purchased it.

3. Plaintiffs contend the City's actions taken with regard to the Property were arbitrary and capricious and had a discriminatory impact on free exercise of religion on the Property, and therefore brings this action pursuant to 42 U.S.C. § 1983 and §1988 and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc et seq. and other federal and state constitutional claims for violation of their civil rights.

4. Further, inasmuch as the City of Laurel has arbitrarily used the zoning text amendment process to impose additional restrictions on properties in the Historic District, Plaintiffs complain that the use restrictions violate their constitutional rights and amount to an unauthorized taking of their Property, in violation of the property rights guaranteed to them by the U.S. Constitution and federal law.

## JURISDICTION AND VENUE

5. This action arises under the United States Constitution and federal law, particularly 42 U.S.C. §§ 1983 and 1988 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, et seq.

6. This Court is vested with original jurisdiction over these claims by operation of 28 U.S.C. §§ 1331 and 1343.

7. This Court is vested with authority to grant the requested declaratory judgment by operation of 28 U.S.C. § 2201, et seq.

8. This Court also has supplemental jurisdiction over any state law claims.

9. This Court is authorized to award attorneys' fees pursuant to 42 U.S.C. § 1988.

10. Venue is proper in United States District Court for the District of Maryland under 28 U.S.C. § 1391(b), because Defendant resides in the District of Maryland, the events

giving rise to the claim occurred within the District of Maryland, and the subject Property is located in the District of Maryland.

## PARTIES

11.     Plaintiffs Patricia Waters and Scott Novak are adult residents of Carroll County, Maryland and are the owners of the affected commercial property at 604 Main Street in Laurel.

12.     Defendant City of Laurel, Maryland, is a public body corporate and politically established, organized, and authorized under and pursuant to the laws of the State of Maryland, with the authority to sue and be sued, and was at all times relevant herein, operating within the course and scope of its authority and under color of state law.

## FACTUAL BACKGROUND

13.     Plaintiffs have owned 604 Main Street since December 4, 2003 when the Property was purchased so that Ms. Waters could operate an edible fruit arrangement store known as "Fruitflowers."

14.     After Fruitflowers closed, the Plaintiffs began to rent the Property for general commercial use.

15.     One of the uses was a cigar lounge operated by Sha'ron Harris.

16.     On or about December 28, 2015 Ms. Harris was evicted by Plaintiffs and their property manager agent, Patrageous Enterprises, LLC (a single member limited liability company formed by Patricia Waters for the management of the property) for nonpayment of rent.

17.     On information and belief, Ms. Christian Pulley, who at the time was the Assistant Director of Economic and Community Development for the City of Laurel, had been very supportive of Sha'ron Harris operating a cigar lounge at the property and even became friends with Ms. Harris during the city's processes.

18.      Ms. Pulley is presently the Director of Economic and Community Development.

19.      On information and belief, when Plaintiffs were negotiating with potential new tenants, who also sought to operate a cigar lounge at the Property, just weeks after the eviction of Ms. Harris, Ms. Pulley advised those prospective tenants that they needed to complete the entire approval process for a new special exception, even though the City of Laurel Board of Appeals had evaluated that use and granted Ms. Harris a special exception for the use previously.

20.      It was at this time, January 15, 2016, that the Plaintiff Patricia Waters requested a meeting with then Director, Jack Brock, and Christian Pulley, then Assistant Director, to challenge the City's use of the special exception process claiming it was no longer focused on property use but allowed for scrutiny of who would be operating a business at that location. At the conclusion of the meeting, it was Ms. Waters understanding that the City determined no future special exception was needed for a cigar lounge to be operated at the property.

21.      Subsequently, on February 15, 2018 when the current tenants sought to open a cigar lounge, Ms. Pulley, now the Director, reneged and said that the tenants would have to undergo a special exception application process. This special exception application process requires a statement of justification, an existing site conditions plan, a proposed site plan and a non-refundable $5,000 application fee.

22.      Prior to the current tenants and their cigar lounge application, in the late Spring/early Summer of 2016, Plaintiffs were presented with interest in the Property by an agent for Pastor Anthony Adenikinju, pastor of a church named the Shadow of the Almighty Ministries, hereinafter referred to as "the Church."

23.      The Shadow of the Almighty Ministries was a valuable and viable prospective tenant.

24. The pastor believed the Property would be well suited to his congregation's needs.

25. Pastor Anthony's interest in the Property was communicated to the Plaintiffs, through his realtor, Anjolene Smack-Whaley.

26. On July 6, 2016, Ms. Smack-Whaley discussed the Church's interest in moving to the historic Laurel area with Ms. Christian Pulley.

27. Ms. Pulley was receptive to the idea until Ms. Smack-Whaley mentioned the address of the Property.

28. Ms. Pulley stated that a church could not exist at that Property due to parking limitations, and that even if the special exception was applied for (at that time before the Redemption Church case all churches on less than one acre needed a special exception) that the parking limitations prevented a church from being sited there.

29. On information and belief, Ms. Pulley's statements were motivated in part from her friendship with Ms. Harris who had just been evicted from the property seven (7) months beforehand.

30. At that time, the City of Laurel was enacting a de facto land use procedure of their own allowing for personal scrutiny by city officials such that one had to convince Ms. Pulley first of what the use of the property would be and then made her own determination as to whether or not parking was an issue. If she were satisfied by her own standards that parking was not going to be a problem, then she would allow one to apply for a special exception as was required at that time for church use on the property.

31. Accordingly, the statements to Ms. Smack-Whaley coming from Ms. Pulley, then the Assistant Director of Economic and Community Development, had a chilling impact on the

Church's further consideration of the Property for its use.  Indeed, Ms. Pulley said they could not put a church there.

32. Ms. Pulley's statement was reported to Plaintiff Patricia Waters by Smack-Whaley on July 6, 2016 and this prompted Ms. Waters to contact Ms. Pulley to discuss the matter.

33. Ms. Pulley, on behalf of the City of Laurel, told Ms. Waters that she would vote against any special exception or other process whereby the church would apply to use the Property as a church.  She stood by the pretext of lack of parking as the crucial basis for her decision, but, on information and belief, her decision was motivated in part by Ms. Waters having evicted Ms. Sha'ron Harris.

34. When this information about Ms. Pulley on behalf of the City disallowing a church at the location, Pastor Anthony took no further action toward entering into a lease for the Property.

35. Pastor Anthony's church received a special exception approval on November 15, 2016 for a Ft. Meade Road location even though that property is adjacent to the Farmer's Market and presented an even greater parking challenge per the City's stated concerns than the Plaintiffs' Property, which is directly across from a parking area,  a newly acquired public parking lot one block from the property, and available street parking on Sunday mornings.

36. Ms. Pulley's hostility to Plaintiff Patricia Waters combined with her "insider" role in the City of Laurel's land use/special exception process, a process that had no rational basis and had a discriminatory impact on churches, and allowed Ms. Pulley and other officials to exercise arbitrarily their discretion over the particular use of Plaintiffs' Property and discourage a prospective tenant.

37. This exercise of authority is abuse of discretion and authority of a public official, and the process whereby the City controlled use of the Property under the pretext of parking regulations, and the need to have a special exception process for churches on lots less than one acre, caused Plaintiffs to suffer monetary damages, as it was another two years before they were able to get a tenant, the current cigar lounge occupant.

38. In the meantime, Plaintiff Ms. Waters learned that the Redemption Community Church nearby on Main Street, at 385 Main Street, had sued the City of Laurel and that similarly the City used parking and the special exception process as a pretext in an effort to keep that church off Main Street.

39. It is apparent that the City's regulations and code are being used in a manner such that there is a discriminatory impact against churches.

40. Recently, Ms. Waters learned that in response to, and to obtain settlement of, the Redemption Church lawsuit, that the City enacted Text Amendment 250 on September 24, 2018, removing the special exception requirement for churches on less than one acre and allowed that to be a permitted use in the commercial village zoning where Plaintiffs' property is located. Further, the Text Amendment for houses of worship and churches varies from the current parking space allotment requirements for other uses and simply allows the applicant to demonstrate that parking and traffic will not adversely affect adjacent residential neighborhoods.

41. Text Amendment 250 as enacted would have allowed Plaintiffs to have rented their Property to the Shadow of the Almighty Ministries, when they were approached by the Church in the summer of 2016, and they would have been receiving rent from the time of lease execution but for the then City's requirements.

42. Enactment of Text Amendment 250 serves as an acknowledgment that a text

amendment known as Text Amendment 238 which had created the special exception requirement for churches including rigorous parking regulations and restrictions, had an adverse and discriminatory impact.

43. During the hearings leading up to Text Amendment 238, compelling testimony was elicited from Reverend Jeremy Tinestrom who explained his disappointment because his church closed on 385 Main Street and he had been working to obtain a parking waiver under the prior regulations.

44. Plaintiffs' Property was purchased and used long before Text Amendment 238 was enacted, March 2015, and the enactment of Text Amendment 238 imposed significant new restrictions on Plaintiff's use of the Property, requiring special exception and there was also scrutiny about the parking requirements.

45. Those requirements have been used in an unconstitutional manner allowing undue scrutiny of their use of the Property as well as allowing for Ms. Pulley to exercise her personal vendetta.

46. Upon information and belief, secular assemblies and institutions on Main Street are granted parking waivers regularly and parking waivers are routinely granted for other businesses located in the C-V zone, but not for churches and religious assemblies.

47. This disparity in treatment of secular assembly uses versus religious assembly uses became apparent in the Redemption Church litigation

48. Unbeknownst to Plaintiffs, the City Council had been using text amendments to regulate property use for religious institutions and others on Main Street. Up until the text amendment issued in the Redemption Church matter, Plaintiffs were told by the City of Laurel through Ms. Pulley on July 6, 2016 that there was no way to lease their Property to a church

due to her view of the parking and that even then, the church would have to undergo the rigorous special exception process. Ms. Pulley's statement carried great weight and authority, and misrepresented her role in the approval process.

49. The special exception process that existed required the submission of a detailed Special Exception Application, including: 1) a Statement of Justification; 2) an Existing Conditions Site Plan; 3) a Proposed Site Plan; and 4) a non-refundable $2,000.00-$5,000.00 filing fee.

50. The Statement of Justification had to include sufficient evidence to satisfy multiple criteria. Additionally, there would have to have been an engineer to draft an existing conditions site plan and a proposed site plan. Once the application is submitted, the City Board of Appeals must hold a public hearing and then has the authority to deny or approve the special exception.

51. The former Director of Economic and Community Development, Jack Brock, has stated the reason for Text Amendments for "special exceptions for churches" is "to provide an additional level of review by the Planning Commission."

52. The Land Development Code allows as permitted uses in the C-V Zone a wide variety of secular assemblies that are not necessarily put to the same level of scrutiny as either the church or, for that matter a Property owner.

53. After receiving the information from Ms. Pulley regarding the forbidden use of the property as a church due to parking and having to go through the special exception procedure and the view of Ms. Pulley that she would vote against it, the Church was dissuaded and abandoned negotiations with Plaintiffs, deciding not to proceed with renting their building.

54. Plaintiffs spent years looking for a replacement tenant but because of the City's

varying parking requirements on the Property, and additionally the special exception application process, could not find one without undue expense.

55. Land use and development in the City of Laurel is regulated by the City of Laurel Unified Land Development Code, as amended, hereinafter referred to as the "Land Development Code."

56. 604 Main Street is located in the Commercial Village Zone or C-V Zone.

57. Prior to Text Amendment 250, within the C-V Zone, use of the Property as a church would have required a special exception.

58. Other nonreligious assemblies or institutions are not subject to this level of scrutiny.

59. The Land Development Code defines "house of worship" in Section 20-1.7 as, "A church, temple, synagogue, mosque, or other building specifically used for organized worship. It shall be unlawful as an accessory, ancillary or secondary to other uses on the same premise."

60. The use of 604 Main Street by The Shadow of the Almighty Ministries would have been as a house of worship under the Land Development Code.

## LEGAL ALLEGATIONS

61. Defendant's Land Development Code constitutes a land use regulation or a system of land use regulations by law.

62. All acts of the Defendant, its officers, agents, servants, employees, or persons acting at their behest or direction, were done and are continuing to be done under the color and pretense of state law, including the ordinances, regulations, customs, policies and usages of the City of Laurel.

63. Defendant's unequal treatment and discrimination against the use of the Property as a church, through its Land Development Code and its officers, agents, servants, employees, or persons acting at their behest or direction, has caused the Plaintiffs, who intended to rent Property to the Church, to suffer damages.

64. Plaintiffs as Property owners who intended to lease the Property to a house of worship have standing to sue for discrimination on religious grounds.

65. As is set forth below, Defendant has violated Plaintiffs' constitutional rights to use their Property, and Defendant's manipulation and application of the special exception process and the manner in which they  adopt  parking requirements and waivers has a discriminatory impact on houses of worship in the City of Laurel.

## COUNT I – VIOLATION OF RLUIPA'S "EQUAL TERMS" PROVISION, 42 U.S.C. § 2000cc(b)(1)

66. Plaintiffs hereby reiterate and adopt each and every allegation in the preceding paragraphs.

67. Defendant's Code, the then existing Text Amendment 238, and the application of the special exception requirements violated the equal terms provision of RLUIPA, 42 U.S.C. § 2000cc(b)(1).

68. The use of the premises as a church would constitute a religious assembly or institution and Plaintiffs intent to lease to a church provides them with standing.

69. Defendant's Land Development Code regulates land use in Laurel, Maryland.

70. Defendant's Land Development Code requiring a special exception process for religious assemblies than similarly located secular assemblies and the  arbitrary application additional requirements  through text amendment process for houses of worship, both on its face and as applied, treated the Property owner on less than equal terms than if they were to

have leased the Property to secular assemblies and institutions, because secular assemblies do not have these same arbitrary and capricious requirements.

71. There are other secular assemblies and institutions which were not subject to this amount of scrutiny.

72. Defendant's Land Development Code and text amendments existing at the time of the negotiations with The Shadow of the Almighty Ministries requiring a special exception for houses of worship based on parking restrictions and other regulations subjected the Plaintiffs to rules that were arbitrary, capricious and/or had a discriminatory impact on places of worship.

73. The City's Assistant Director of Economic and Community Development explicitly stated to the realtor representing the Church that although the Church could not lease the premises due to a lack of parking and also would have to apply for a special exception including a nonrefundable $2,000 fee, allowing for use as a church, that she would block the passage of any special exception for the Church at Plaintiffs' Property.

74. Thus there was a chilling effect on the church and caused it to abandon its interest in the Property. The loss of this lease caused monetary damages to Plaintiffs in terms of lost revenue and profit from the lease.

75. The City Council's unexplained and arbitrary enactment of Text Amendment 250 removing the parking and special exception requirements is evidence that at the time Plaintiffs intended to lease to the Church that there was an unwarranted and arbitrary regulation in effect, which had a discriminatory impact on Plaintiffs, and that they enacted it to exculpate themselves from liability in a then pending RLUIPA lawsuit.

76. Defendant's Code, both on its face and as applied, violated the Plaintiffs' free

exercise of religion by preventing them at the time from leasing their Property to a church as guaranteed by RLUIPA, 42 U.S.C. § 2000cc(a)(1).

77. The intended use of the Property under the lease constituted "religious exercise" under 42 U.S.C. § 2000cc-5(7)(A)-(B).

78. Plaintiffs' negotiations with the Church for a lease of the premises at 604 Main Street were terminated as a result of Ms. Pulley's comments and actions.

79. Upon information and belief, Defendant receives federal financial assistance.

80. Upon information and belief, Defendant's Land Development Code affects commerce with foreign nations, among the several states, or with Indian tribes.

81. Defendant's Land Development Code permits it to make individualized assessments of the proposed uses of Property within the City, including the Plaintiffs' Property, and in making those individualized assessments is permitted to do so in a discriminatory manner.

82. The requirement that houses of worship must first undergo an onerous, costly, and uncertain special exception process to obtain permission to exist in the C-V Zone under the pretext of parking and other requirements directly discouraged and caused the church to withdraw from negotiations to lease the Property from Plaintiffs.

83. Defendant's Land Development Code requiring a special exception for houses of worship, both on its face and as applied, was neither neutral nor a general law of applicability because similar secular assemblies and institutions were not subject to this regulation.

84. Defendant's Land Development Code requiring a special exception for houses of worship both on its face and as applied, discriminatorily targeted religion and religious worship.

85. There was no compelling government interest sufficient to justify requiring a

different parking regulation than a secular business such that a special exception or parking waiver would be required. And this was evident from the passage of Text Amendment 250 removing the requirements altogether.

86. Text Amendment 238 was not the least restrictive means to accomplish any permissible government purpose sought to be served by the land use regulations and allowed for officials like Ms. Pulley to exercise an inordinate amount of scrutiny over the Property owners on Main Street.

87. It was Text Amendment 238 and other regulations in force and effect at the time the Shadow of the Almighty Ministries was interested in the Property that caused Plaintiffs to lose them as a prospective tenant.

88. Text Amendment 250 made it clear that there was no need for Text Amendment 238 all along and had Text Amendment 250 been in place, the Plaintiffs would have been allowed to execute a lease with The Shadow of the Almighty Ministries.

### COUNT II – VIOLATION OF THE RIGHT TO PEACEABLE ASSEMBLY UNDER THE UNITED STATES CONSTITUTION

89. Plaintiffs hereby reiterate and adopt each and every allegation in the preceding paragraphs.

90. Plaintiffs believed that they should have been able to lease their Property to a church without exposing them to a rigorous and meaningless special exception exercise.

91. The City had no compelling interest in limiting the peaceable assembly of a church on Sunday morning.

92. Defendant's actions requiring a rigorous special exception for houses of worship including parking for a nonexistent parking problem on a Sunday morning, both on its face and as applied, constituted a violation of the Plaintiffs rights and ability to lease their Property to a

church for their right of peaceable assembly under the First Amendment to the United States Constitution, as incorporated and applied to state action, under the Fourteenth Amendment.

## COUNT III -- DECLARATORY JUDGMENT THAT THE TEXT AMENDMENT AND SPECIAL EXCEPTION POLICIES VIOLATE MARYLAND LAND USE CODE § 4-201(bV2)(i) AND ARE THEREFORE INVALID

93. Plaintiffs hereby reiterate and adopt by reference each and every allegation in the preceding paragraphs.

94. The Land Use Article of the Md. Code Ann., (2017), hereinafter referred to as the "Maryland Land Use Code" requires that "zoning regulations shall be uniform for each class or kind of development throughout each district or zone." Md. Land Use Code § 4-201(b)(2)(i) (the "Uniformity Requirement").

95. The Uniformity Requirement was promulgated to "ensure[…] that similarly situated properties would be subject to similar regulation." The uniformity requirement springs from a policy desire to give notice to Property owners that ad hoc zoning discriminations will not be tolerated by the law.

96. The use of and implementation of various text amendments over the years to promulgate special exceptions and parking requirements attendant to Plaintiffs' Property violates the Uniformity Requirement. It is an act of municipal favoritism that adversely affected the Property.

97. As a result, Plaintiffs are damaged and will continue to suffer damage if they cannot tell from day to day what use of their Property will require a special exception or otherwise be vulnerable to arbitrary regulations and scrutiny.

98. Accordingly, Plaintiffs seek relief that establishes a consistent level of use for the

Property consistent with the usage allowed when the purchased the Property in December of 2003.

### COUNT IV -- DECLARATORY JUDGMENT THAT THE TEXT AMENDMENT PROCESS AND SPECIAL EXCEPTION POLICIES VIOLATE THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARE INVALID

99. Plaintiffs incorporate herein by reference the allegations contained in the preceding paragraphs.

100. Text Amendments 238 and 250 were promulgated to address land use issues including parking and when confronted with a constitutional challenge from Redemption Church, Text Amendment 250 was adopted arbitrarily in order to terminate that lawsuit. Therefore, there can be no rational basis for having implemented the special exception and parking requirements in the C-V zone in the first place.

101. The Text Amendments are arbitrary, capricious, discriminatory and individually addressing parking issues challenged in the Redemption Church case and therefore show that there is no rational governmental reason why they could not also have enacted a text amendment or other parking waiver to address the needs of Plaintiffs' Property with respect to its use.

102. The arbitrary, capricious and individually targeted nature of the Text Amendments constitute a violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

103. Plaintiffs are entitled to a declaratory judgment by this Court stating that, because the Text Amendments are used to address matters in an individualized basis, that the parking requirements be made less onerous for Plaintiffs' Property.

104. In this case, the one practical effect of the parking regulations that were enacted

before Text Amendment 250 was to target and prohibit Plaintiffs and others who own small commercial properties, from fully using their properties without individualized governmental scrutiny. This effect is exemplified by the scenarios noted above involving the Church and the cigar lounge at the Plaintiffs' Property.

105. When the Plaintiffs purchased the Property, they had no notice of the forthcoming restrictions that would be imposed by the City of Laurel.

106. The parking requirements and special exceptions that were enacted and the procedure for obtaining a special exception procedure burdened Plaintiffs' Property. This effect made the passage and application of the parking requirements a "special law", inconsistent with the Maryland Constitution.

107. Because the parking requirements were and remain a 'special law' pursuant to the Maryland Constitution, Plaintiffs are entitled to a declaratory judgment by this Court stating that the parking requirements and special exception requirements as enacted and applied to their Property from the time of its acquisition by Plaintiffs are invalid, null, void and of no force and effect.

108. Additionally, given the restrictions applied through parking regulations, almost any business use of any Property on Main Street would require the special exception process which allows for variability, arbitrariness and expense with uncertainty as to whether or not the use will be allowed.

109. Accordingly, Plaintiffs seek a consistent rule or series of rules that effect their Property and that they will therefore have certainty when marketing the Property as to what uses will be allowed on it that are clear, consistent, make sense, are not discriminatory and do not require rigorous special exceptions and waivers with uncertain result.

# COUNT V -- DECLARATORY JUDGMENT THAT THE PARKING REQUIREMENTS REQUIRING SPECIAL EXCEPTION HEARINGS VIOLATE ARTICLE 24 OF THE MARYLAND DECLARATION OF RIGHTS

110.   Plaintiffs incorporate herein by reference the allegations contained in the preceding paragraphs.

111.   The parking requirements and special exceptions contained in the various text amendments were drafted and employed specifically to impair full and free use of the Plaintiffs' Property for commercial purposes and allow for a level of scrutiny such that the City can arbitrarily decide what businesses can be there.

112.   The parking requirements and special exceptions are arbitrary, capricious, discriminatory, and individually targeted at impairing the full use of the Plaintiffs' Property.

113.   The arbitrary, capricious and individually targeted nature of the parking requirements and special exceptions constitute a violation of equal protection and due process pursuant to Article 24 of the Maryland Declaration of Rights.

114.   Plaintiffs are entitled to a declaratory judgment by this Court stating that, because the parking requirements and special exceptions violate Article 24 of the Maryland Declaration of Rights, they are invalid, null, void and of no force and effect.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiffs Patricia Waters and Scott Novak, as Property owners of 604 Main Street, Laurel, Maryland request the following relief:

A.   That this Court issue a Permanent Injunction to enjoin the Defendant, Defendant's officers, agents, employees and all other persons acting in active concert with them, from enforcing its Land Development Code or Text Amendments such that:

>   (1)   Plaintiffs would be prohibited from leasing or using the Property from being used in the future as a church or a house of worship;

    (2)    Defendant must not require the current parking requirements or special exceptions to prohibit or impact use of the Property at 604 Main Street, Laurel, MD 20707 as they are impractical for use of commercial purposes and serve no effect other than to scrutinize the businesses on Main Street;

B.    That this Court render a Declaratory Judgment declaring Defendant's Land Development Code regarding the Plaintiffs' Property as unconstitutional, and declaring that Defendant, Defendant's officers, agents, employees and other persons acting in active concert with them, refrain from unlawfully obstructing the full use of the Property and in that vein, promulgate consistent and practical rules consistent with the rules that were in effect when the Property was purchased by the Plaintiffs.

C.    Enter an award of money damages to compensate the Plaintiffs for the loss of revenue from the Property from July 6, 2016 until they were able to re-let the premises.

D.    Grant to the Plaintiffs an award of their costs of litigation, including reasonable attorneys' fees and expenses.

E.    Grant such other and further relief as this Court deems just and proper.

Dated this 5th day of July, 2019.

                                      Respectfully submitted,

                                      __/s/ Eugene W. Policastri_____
                                      By:  Eugene W. Policastri (14917)
                                      Policastri Law Firm, LLC
                                      600 Jefferson Plaza, Suite 308
                                      Rockville, MD  20852
                                      240.660.2219 (Phone)
                                      240.235.4399 (Fax)
                                      gene@policastrilawfirm.com
                                      Attorney for Plaintiffs

## VERIFICATION OF COMPLAINT

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that I have read the foregoing Verified Complaint and the factual allegations thereof and that to the best of my knowledge the facts alleged therein are true and correct.

Executed this  5th  day of  July , 2019.

_____
PATRICIA WATERS

_____
SCOTT M. NOVAK