**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| **PATRICIA WATERS and** | | |
| **SCOTT NOVAK,** | * | |
| | | |
| **Plaintiffs** | * | |
| | | |
| **v.** | * | **Civil No. 8:19-cv-01979-PWG** |
| | | |
| **CITY OF LAUREL,** | * | |
| | | |
| **Defendant.** | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Patricia Waters and Scott Novak bring this action against the City of Laurel for allegedly discriminating against religious institutions through its zoning and land use laws. Waters and Novak contend that Laurel's municipal code prevented them from leasing their property to a church, in violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc to 2000cc-5. Plaintiffs seek compensatory damages as well as declaratory and injunctive relief. They assert five causes of action: violation of RLUIPA's Equal Terms provision, infringement of their constitutional right to assembly, and three counts seeking declaratory judgment that the City's code violates Maryland law and the U.S. Constitution. The City of Laurel now moves to dismiss the claims against it.[1] As discussed herein, Plaintiffs' allegations regarding a rental inquiry from a church do not suffice to confer constitutional standing under RLUIPA, and the dispute regarding whether the City's zoning laws infringe on religious organizations had

---

[1] The motion has been fully briefed. *See* ECF Nos. 16, 19, 20. A hearing is not necessary. *See* Loc. R. 105.6 (D. Md. 2018).

already been resolved in separate litigation.[2]  Because this Court lacks subject matter jurisdiction and there is no justiciable Article III case or controversy, the City's motion to dismiss is granted, and the Amended Complaint will be dismissed without prejudice.

### Background

For purposes of considering Defendant's motion, this Court accepts the facts that Plaintiffs alleged in the Amended Complaint as true. *See Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). Since 2004, Plaintiffs have owned 604 Main Street, a townhouse-turned-business in downtown Laurel. Pls.' Resp. 2, ECF No. 19. Waters initially used it to operate an edible fruit arrangement store but later leased it for general commercial use. *Id.* One commercial tenant turned the premises into a cigar lounge. Am. Compl. ¶ 16. Due to land use restrictions in Laurel's downtown commercial zone, the cigar-lounge tenant applied for and received a "special exception" permit from the city. *Id.* ¶ 23. In 2015, Plaintiffs evicted the cigar-lounge tenant for overdue rent. *Id.* ¶ 17.

In 2016, a church pastor's realtor inquired about the possibility of renting Plaintiffs' empty property to the congregation, Shadow of the Almighty Ministries. *Id.* ¶¶ 28, 29. When the pastor's realtor began making inquiries, Christian Pulley, the City's assistant director of economic development, allegedly told the realtor that a church could not be located at 604 Main Street. *Id.* ¶ 33. Pulley allegedly informed Waters that the prospective tenant would need to apply for a "special exception" permit and that she would oppose the request given the minimal on-site parking spots. *Id.* ¶ 38. But Plaintiffs do not accept this explanation, and allege that Ms. Pulley's true motivation was her sympathy for, and allegiance to, the evicted cigar-lounge tenant. *Id.* ¶¶ 18, 19. After

---

[2]     *See Redemption Cmty. Church v. City of Laurel*, 333 F. Supp. 3d 521 (D. Md. 2018) (resulting in the City's amendment to the code to remove the requirement for religious institutions to seek a special exception permit).

Pulley's warning, the pastor took no further action to secure a lease from Plaintiffs. *Id.* ¶ 39. Waters and Novak allege that the City's parking requirements and then-existing "special exception" process for houses of worship, in addition to Pulley's opposition, caused the pastor and his church to walk away from leasing their property. *Id.* ¶¶ 41, 42.

The City's Zoning Code specifies which types of commercial uses—everything from bakeries and poetry readings to gun shops and karaoke—are permitted in which parts of Laurel. Def.'s Ex. C 83-94, ECF No. 16-5. An ice cream parlor, for instance, is "permitted," "permitted with a special exception," or "prohibited" depending on the commercial zone. *Id.* at 89. To obtain a special exception, applicants must pay a fee and demonstrate that their proposed use meets five conditions, including that it will not adversely affect the welfare of residents and workers in the area. *Id.* at 211. The City's Board of Appeals may then grant the exception after a public hearing. *Id.* at 211, 213.

Previously, houses of worship, convents, and monasteries were only permitted with a special exception in Laurel's commercial zones. Def.'s Ex. G, ECF No. 16-10. But in 2018 (after the events that form the basis of this lawsuit), the City Council amended the code to make religious institutions simply "permitted" across those districts, without requiring a special exception. *Id.* The revision came in response to a different RLUIPA lawsuit, which the City settled. Am. Compl. ¶ 46. In that case, the plaintiff was a church, which brought both facial and as-applied challenges to the special exception permitting process. *Redemption Cmty. Church v. City of Laurel*, 333 F. Supp. 3d 521 (D. Md. 2018).

Separately, under the Zoning Code—both the 2016 version and the one that remains in effect today—houses of worship must have one off-street parking space for every four auditorium seats, so a church with a 100-seat auditorium would be required to have twenty-five parking

spaces, unless it receives a waiver from the City's Planning Commission. *See* Def.'s Mem. 9, ECF. No 16-1; Pls.' Resp. 9. Even so, a house of worship that falls within the City's "parking modification zone" is entitled to a reduction of 50 percent, meaning a 100-seat church would need just thirteen on-site parking spaces. *See* Def.'s Ex. C 179; Pls.' ECF No. 19-2. As noted, the Zoning Code provisions on parking requirements, waivers, and reductions that existed in 2016 remain in place today, unaffected by the 2018 amendments. Def.'s Mem. 6; Pls.' Resp. 3. Given Waters and Novak's five parking spaces, they could rent to a forty-seat church at any time, without the church needing a parking waiver from the Planning Commission or a special exception from the Board of Appeals. *See* Pls.' Resp. 6-7. Still, Plaintiffs complain that while churches can reduce their parking requirements by half, certain secular establishments such as retail stores can get a 60 percent reduction. *Id.*

Plaintiffs' prospective tenant found a different location for Shadow of the Almighty Ministries in late 2016, several months after inquiring about 604 Main Street. Am. Compl. ¶ 40. At the time, the church had to apply for a special exception at that site too. *See id.* at 3. According to Defendants, the space was more than ten times larger and had more parking spaces than Plaintiffs' property. Def.'s Mem. 16 n.3. Neither the pastor nor the congregation is a party to this suit. Waters and Novak eventually found a different tenant, who currently operates another cigar lounge. Am. Compl. ¶ 26. Plaintiffs seek $54,000 from the City for the eighteen-month period between the two cigar-lounge tenants during which their property sat empty.

In its motion to dismiss, the City argues that Plaintiffs lack standing, the claims for declaratory judgment are moot because of the 2018 Zoning Code amendment, the City official who allegedly dissuaded the pastor had no decision-making authority, RLUIPA's "Equal Terms"

provision only applies to religious institutions, and Plaintiffs' constitutional claims assert mere conclusory allegations.

## Standard of Review

Defendant moves to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. Even if Waters and Novak can demonstrate that subject matter jurisdiction exists, the City argues that the case should be dismissed for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

"Standing is a jurisdictional issue . . . ." *Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 118 (4th Cir. 2004). When plaintiffs lack standing or their claims have become moot, there is no Article III case or controversy, and the court must dismiss the action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). *See, e.g.*, *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 78-79 (2013); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103-04 (1998). A court may grant a Rule 12(b)(1) motion "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins, Co.*, 166 F.3d 642, 647 (4th Cir. 1999). It is the plaintiff's burden to prove subject matter jurisdiction. *Id.*

When, as here, a defendant makes a facial challenge to subject matter jurisdiction, "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Kerns*, 585 F.3d at 192 (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). The district court takes the facts alleged in the complaint as true and only grants the motion to dismiss if the complaint fails to allege sufficient facts to invoke subject matter jurisdiction. *Id.* This standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a court will accept factual

allegations as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

When reviewing the motion, a court may consider documents outside the complaint if they are "integral to and explicitly relied on in the complaint" and their authenticity is not challenged.[3] *E.I. du Pont de Nemours and Co. v. Kolon Indus.*, 637 F.3d 435, 448 (4th Cir. 2011) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). Where the allegations in the complaint conflict with an attached written instrument, "the exhibit prevails." *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991); *see Azimirad v. HSBC Mortg. Corp.*, No. DKC-10-2853, 2011 WL 1375970, at *2-3 (D. Md. Apr. 12, 2011). A court's consideration of such integral documents does not convert the motion to dismiss into one for summary judgment. *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005).

## Discussion

A court that lacks subject matter jurisdiction "has no power to adjudicate and dispose of a claim on the merits." *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co*, 523 U.S. at 94-95 (quoting *Ex parte McCardle*, 7 Wall. 506, 514 (1868)).

---

[3]     For purposes of this motion and the foregoing Background, I have considered relevant sections of the City's Unified Land Development Code ("Zoning Code"), Ex. C, ECF No. 16-5, and the City's 2018 amendment to the Zoning Code regarding houses of worship, Ex. G, ECF No. 16-10. Although they were appended to the Defendant's motion, and not Plaintiffs' Amended Complaint, the Zoning Code and amendment are integral documents, because the Amended Complaint explicitly cited and relied heavily on them. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). Plaintiffs have not challenged the authenticity of either document.

Plaintiffs Patricia Waters and Scott Novak do not have standing to pursue this suit because they have not alleged facts sufficient to find that the City caused them to suffer an actual, concrete injury. Separately, this matter is not a justiciable Article III case or controversy, because there is no live dispute between the parties—some of Plaintiffs' claims are moot, while others have yet to ripen for adjudication. Because a plaintiff "must demonstrate standing for each claim he seeks to press and for each form of relief that is sought," each count is considered in turn below. *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)) (internal quotation marks omitted).

## I.  The RLUIPA claim

The Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc to 2000cc-5, protects religious organizations and individuals from discriminatory and unduly burdensome land use regulations.[4] In their Amended Complaint, Waters and Novak allege that the City violated RLUIPA's Equal Terms provision, which states: "No government shall impose or implement a land use regulation in a manner that treats **a religious assembly or institution** on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000cc(b)(1) (emphasis added). "In general, there are 'four elements of an Equal Terms violation:' (1) the plaintiff must be a religious assembly or institution, (2) subject to a land use regulation, and (3) the regulation must treat the religious assembly on less than equal terms than (4) a nonreligious assembly or institution." *Redemption*, 333 F. Supp. 3d at 531 (quoting *Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward Cty.*, 450 F.3d 1295, 1307 (11th Cir. 2006)). While not a religious

---

[4]      The issues before the Court pertain to RLUIPA's land use provisions. Another section of the statute, which is not relevant to this case, concerns religious exercise of people in prisons and other institutions.

assembly or institution, Waters and Novak argue they have standing to bring their RLUIPA claim because they intended to lease 604 Main Street to a church. Am. Compl. ¶¶ 70, 74.

### A.  Plaintiffs cannot demonstrate Article III standing.

RLUIPA provides that "[s]tanding to assert a claim or defense under this section shall be governed by the general rules of standing under Article III of the Constitution." 42 U.S.C. § 2000cc2(a). To meet the "irreducible constitutional minimum of standing," a plaintiff must have suffered "a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).[5] An injury in fact is an "invasion of a legally protected interest" that is "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks omitted). Together, the three necessary conditions of standing—(1) injury in fact, (2) causation, and (3) redressability—comprise "the core of Article III's case-or-controversy requirement." *Steel Co*, 523 U.S. at 103-04.

Plaintiffs allege that they lost income when they lost their prospective rental, and the loss of prospective income may constitute an injury in fact. One court found that a property owner had standing to sue under RLUIPA after he and his church tenant were denied a zoning variance. *See Andon, LLC v. City of Newport News*, 63 F. Supp. 3d 630, 638 (E.D. Va. 2014) ("Although Plaintiffs do not allege the specific amount of lost future profits, the mere fact that Andon lost the

---

[5]     Onto these constitutional requirements the Supreme Court has overlaid "additional prudential limitations on standing, including 'the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Nat'l Orgs. for Marriage v. McKee*, 649 F.3d 34, 46 (1st Cir. 2011) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)).

future, non-speculative benefit of lease payments is sufficient by itself to constitute an actual injury."). However, that case is distinguishable, first, because the plaintiffs had applied for a zoning variance from the city and appealed the subsequent denial. Second, the owner and tenant had already signed a lease agreement. Third, the case was brought under a different provision of RLUIPA.

Here, the harm of which Waters and Novak complain is too abstract and counterfactual to constitute an injury in fact or one that is fairly traceable to the City. Plaintiffs argue they would have secured Shadow of the Almighty Ministries as a tenant and would not have lost eighteen months of rent—their purported injury—were it not for the City employee's admonition to their prospective tenant and the Zoning Code's parking and permit requirements. Waters and Novak argue that these events caused the pastor to choose a different space to rent on the basis that those events occurred prior to the pastor renting a different space.[6] This causal claim is implausible because the church opted to sign a lease at a location where, at the time, it had to go through the same special exception permit process. Thus, Plaintiffs' harm—the pastor's decision to rent a space from someone else—is not fairly traceable to the alleged actions by the City.

Certainly, a plaintiff need not demonstrate stringent "proximate causation" to satisfy Article III standing. *Lexmark*, 572 U.S. at 134 n.6. Rather, the "fairly traceable" element is designed to ensure that a plaintiff's injury is not the result of "independent action of some third party not before the court." *Lujan*, 504 U.S. at 560. A "speculative chain of possibilities" that rests

---

[6] This is a fallacious form of reasoning. Events that happen sequentially are not necessarily causally related. *Post Hoc Ergo Propter Hoc*, BLACK'S LAW DICTIONARY (11th ed. 2019). Of course, while temporal correlation does not prove causation, but neither can it be ignored. *Maryland Shall Issue, Incorporated v. Hogan*, --- F.3d ----, 2020 WL 4664810, at *7 (4th Cir. 2020) (citing *United States v. Undetermined Quantities of All Articles of Finished & In-Process Foods*, 936 F.3d 1341, 1349 (11th Cir. 2019)).

on "decisions of independent actors" does not confer standing. *Clapper v. Amnesty Int'l*, 568 U.S. 398, 414 (2013). To trace Plaintiffs' rent shortfall to the City, one must accept an attenuated chain of hypotheticals—that the pastor would not have continued looking at alternative locations and would have instead pursued lease negotiations with Waters and Novak, agreed to their rent terms, applied for a special exception permit, found a way to deal with the limited parking, and stayed put for at least eighteen months. This chain is too speculative and attenuated to support standing with regard to Plaintiffs' claims for lost rent.

In any event, special exception permits—which are still required in the zoning area where Plaintiffs' property is located, for concert halls, buildings with more than three dwelling units, hotels, senior housing, and other uses—have been repealed for houses of worship following the *Redemption* litigation. This renders moot the core of Plaintiffs' claims that do not seek to recover lost rent. "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 512 (1969). When Waters and Novak first brought this case, there was no live dispute about whether the City's zoning laws infringe on religious organizations by requiring a special exception permit. Nor is there a live dispute now.

Insofar as the RLUIPA claim challenges the City's parking requirements as onerous on property owners, Plaintiffs have not stated an Article III case or controversy for this Court to adjudicate. To the extent that Plaintiffs allege religious discrimination, their claims are purely hypothetical, abstract, and not ripe for consideration. Waters and Novak currently collect rent from a cigar-lounge tenant. They do not indicate anywhere in their pleadings that they are attempting to lease 604 Main Street to a religious institution or that the City is interfering with their efforts to do so.

10

## II.  The right to peaceably assemble

Waters and Novak's second claim alleges a violation of their First Amendment right to peaceably assemble pursuant to 42 U.S.C. § 1983. This Court has no jurisdiction to hear the merits of the claim, because Plaintiffs have failed to demonstrate an injury in fact.

While a chilling of one's First Amendment activities is sufficient to demonstrate an injury in fact, a subjective or speculative chilling effect is not. *Benham v. City of Charlotte*, 635 F.3d 129, 135 (4th Cir. 2011). Government action that would likely deter a person of "ordinary firmness" from exercising First Amendment rights is sufficiently chilling to constitute an injury in fact. *Id.* Though related to a freedom of speech claim, *Benham* is highly instructive here. The plaintiffs had brought suit against the city of Charlotte for denying them a public assembly permit. The Fourth Circuit held that the applicants failed to demonstrate an injury in fact, because the permit was not a "prerequisite to *any* form of the expressive activity they wished to undertake." *Id.* at 136. Specifically, plaintiffs could not claim the lack of street closures or sound amplification as cognizable injuries, when they had not requested authorization for either. *Id.* at 136-37.

Similarly, Waters and Novak never applied for any permit to hold a religious assembly at their property. Plaintiffs have not shown how they—rather than a former prospective tenant—were chilled in any way from exercising their First Amendment freedoms. Because Plaintiffs cannot demonstrate a cognizable injury, Count II is also dismissed for lack of subject matter jurisdiction.

## III. Declaratory judgment under the Maryland Land Use Code

In their third claim, Waters and Novak seek a declaratory judgment that the City's Zoning Code violates a Maryland land use law, which states, "zoning regulations shall be uniform for each class or kind of development throughout each district or zone." Md. Land Use Code § 4-201(b)(2)(i). Plaintiffs argue that parking requirements and special exception permits breed

"municipal favoritism" in violation of the state uniformity requirement. Plaintiffs allege that arbitrary regulations and enforcement have harmed their business prospects and will continue to cause harm without a judgment finding Zoning Code provisions unlawful.

Article III's case-or-controversy requirement does not vanish when the relief sought is declaratory. To be justiciable, the dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests" and "a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937). Plaintiffs have not demonstrated an actual or impending controversy between themselves and the City. The 2018 code amendment rendered moot their complaints regarding the special exception process for churches. Plaintiffs do not allege that the parking requirements that are still in place today are interfering with current or imminent business opportunities. Their frustration and complaints regarding the City's Zoning Code should be sorted out through legislative channels, not in an Article III court where their dispute is entirely hypothetical. *See Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 475 (1982) ("[T]he Court has refrained from adjudicating 'abstract questions of wide public significance' which amount to 'generalized grievances,' pervasively shared and most appropriately addressed in the representative branches."). Count III is dismissed for lack of subject matter jurisdiction.

## IV. Declaratory judgment under the Fourteenth Amendment

Waters and Novak assert that Laurel's Zoning Code provisions also violate their Fourteenth Amendment rights of due process and equal protection pursuant to § 1983. They demand a

declaratory judgment that the special exception and parking requirements as enacted and applied to their property for the last sixteen years are void.

For the same reasons stated above, Waters and Novak do not have standing to pursue Count IV. There is no live dispute to be adjudicated. Any past theoretical injuries from the City's special exception permits are moot, following the City Council's code amendments in 2018. Their grievances directed at parking minimums and the waiver process are not ripe for consideration. Like standing, the ripeness doctrine originates in Article III's case-or-controversy requirement and presents a "threshold question of justiciability." *Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 269 (4th Cir. 2013) (quoting *Lansdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBand at Lansdowne, LLC*, 713 F.3d 187, 195 (4th Cir. 2013)). Its purpose is to prevent courts from prematurely wading into "abstract disagreements." *Id.* at 270 (citation omitted). There is no current dispute to adjudicate here. Plaintiffs are not, for instance, disputing the denial of a City permit or waiver request. Count IV does not present a live controversy and is dismissed.

## V.  Declaratory judgment under the Maryland Declaration of Rights

Waters and Novak's final claim seeks a declaratory judgment that the Zoning Code provisions violate Article 24 of Maryland's Declaration of Rights, which guarantees due process of law, and therefore are void. For the same reasons set forth in the preceding two sections, Plaintiffs have not pleaded an actual, justiciable dispute. There is no ongoing or imminent controversy that this Court can adjudicate—only generalized grievances. Count V is also dismissed.

## Conclusion

Waters and Novak do not have standing to pursue any of the claims in their Amended Complaint. The injuries they allege are too abstract and attenuated from the challenged land use

13

laws. Because Waters and Novak lack standing and there is no justiciable controversy before this Court, I need not reach the merits of their claims or the parties' arguments under Rule 12(b)(6). The Amended Complaint is dismissed for lack of subject matter jurisdiction.

### Order

For the reasons stated in this Memorandum Opinion and Order, it is this 24th day of August 2020, hereby ORDERED that

1. Defendant's Motion to Dismiss, ECF No. 16, is GRANTED;

2. Plaintiffs' claims are DISMISSED WITHOUT PREJUDICE;

3. The CLERK is directed to CLOSE this case.

_____/S/_____
Paul W. Grimm
United States District Judge

14